IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


BARBARA A. MITCHELL,

      Plaintiff,

vs.                                         CASE NO. 5:05cv12-RH/WCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

_____/


## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation

pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the

decision of the Commissioner be reversed and remanded for additional evidence.

**I.      Procedural status of the case**

      Plaintiff, Barbara A. Mitchell, applied for disability insurance benefits and

supplemental security income benefits.  Plaintiff was 41 years old at the time of the

administrative hearing.  She had a 12th grade education with some training as an

administrative clerk and a nurse's aide.  Her past relevant work was as a nurse's aide,

assembly line worker, retail sales clerk, and bank mail clerk.

Plaintiff alleges disability due to pain in her back, hips, knees, wrists, and shoulders, weakness of the knee and hands, osteoarthritis, chest pains, fibroid tumors, obesity, fatigue, depression, and anxiety.  The Administrative Law Judge found that Plaintiff had the residual functional capacity to do light work with limitations, was capable of returning to her past relevant work as a mail clerk, and was not disabled as defined by Social Security law.

## II.    Legal standards guiding judicial review

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

The Commissioner's rules define "light work" in part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

## III.   Analysis

Plaintiff testified that she lost her last job as a nurse's aide because her employer determined that she was not strong enough to handle the patients.  R. 432.  She said she had left her previous job as a night mail clerk because of stress and inability to sleep.  *Id.*  Plaintiff said that she could not return to her former work because she was "either in too much pain or I'm too weak."  R. 434.  She said she was "really fatigued all the time."  *Id.*

Plaintiff said that she had the most trouble with her neck and hands.  *Id.*  She said she needed a neck brace in the afternoon after sitting "too long."  *Id.*  She said she had a lot of pain in the back of her neck.  *Id.*  She said that her neurologist, Dr. Jacobs, told her that she had carpal tunnel syndrome and that she had a deformity in her neck that was causing the problems with her shoulder and hands.  R. 435.  Plaintiff said that she had weakness, numbness, and involuntary movement in her hands and fingers every day.  R. 436.

Plaintiff testified that she also had pain in the left knee.  R. 439.  She said that she had "a lot of weakness," and could not walk or climb stairs.  *Id*.  She said the pain was worse in her hip, and she could not sit for a long period of time.  *Id*.  She said she could sit for a couple of hours before starting to have pain.  R. 445.  She said she could stand for about 30 minutes.  R. 446.  She said that she had pain in her hips and back when she walked on hard floors.  R. 439.  She thought that she could walk about one-half mile.  R. 446.

Plaintiff was treated a number of times at the Life Management Center for stress and anxiety.  R. 440.  Her family physician has prescribed Zoloft for depression.  *Id*.  She said that she took Zoloft everyday and that it helped sometimes.  *Id*.  Plaintiff said that she had trouble sleeping due to depression.  R. 441.  She said that she had suffered from depression for a long time.  *Id*.

Plaintiff said that she was really fatigued and drowsy from her medications.  R. 447.  She also thought she had some memory loss.  *Id*.

**Whether the Commissioner properly determined Plaintiff's "severe" impairments at step 2**

The Administrative Law Judge found that Plaintiff established that "pain in the knees, back and hip, fibroid tumors, and depression and anxiety are 'severe' medically determinable impairments . . . ."  R. 15.  Plaintiff contends that he erred by not finding that she has the following additional "severe" impairments: carpal tunnel syndrome in her hands and wrists, pain in her neck and shoulder, arthritis, anemia, bronchitis, shortness of breath, obesity, hypertension, possible coronary artery disease and chest pain.  Doc. 9, p. 16.

At step 2 of the analysis, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), quoting Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration."  Id.,

*quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

**Bronchitis and shortness of breath**

The finding that Plaintiff's experience of bronchitis and shortness of breath were not "severe" impairments is supported by substantial evidence in the record. On May 10, 2002, Plaintiff had a chest x-ray. While this showed that Plaintiff had "poor lung expansion," her lungs were clear and otherwise normal. R. 183. Over a year later, on September 18, 2003, Plaintiff was examined by Gurprit Sekhon, M.D., reporting "wheezes and fever on and off for almost a week." R. 252. Dr. Sekhon observed "occasional wheezed [sic] all over the lung field," and prescribed an Albuterol inhaler. *Id.* The diagnosis was "bronchitis/asthma." *Id.* An x-ray on September 18, 2003, was normal, with lung fields free of inflammatory or other infiltrative processes. R. 247. An x-ray of the chest on November 6, 2003, again was normal, with lungs clear. R. 299. Upon examination on November 13, 2003, November 20, 2003, December 4, 2003, December 8, 2003, January 29, 2004, Plaintiff's lungs were clear. R. 295-297, 281, 291. On February 12, 2004, Plaintiff's lungs were found to be clear with no wheezes, crackles or rhonci. R. 366. On February 26, 2004, March 3, 2004, her lungs were clear. R. 367, 290. On March 10, 2004, and April 28, 2004, she was found to have acute bronchitis but her lungs were clear. R. 289, 286. In summary, there is no evidence of chronic bronchitis or shortness of breath sufficient to have more than a minimal effect upon Plaintiff's ability to work.

**Hypertension, possible coronary artery disease, and chest pain**

Likewise, the finding that Plaintiff does not have "severe" impairments of hypertension, possible coronary artery disease, and chest pain is supported by substantial evidence in the record.  Plaintiff has only mild hypertension controlled with medications.  R. 155, 157, 277, 281.  She denied having syncope or chest pain with exertion, and said that shortness of breath and palpitations occurred when she heard a loud noise.  R. 276.  A stress echocardiogram on February 26, 2004, was negative.  R. 371.  An x-ray of the chest showed a normal cardiac silhouette and vessels of normal size and contour.  R. 247.  There is no evidence of hypertension, coronary artery disease, or chest pain having more than a minimal effect upon Plaintiff's ability to work.

**Anemia**

On February 18, 2003, it was noted that Plaintiff had a history of anemia.  R. 146. She had been taking iron medication, but was not taking iron at that time.  R. 146.  She was not taking iron medication because it caused constipation.  R. 155.  Plaintiff has not pointed to any evidence in the record that her anemia cannot be controlled by diet and supplements, or that it causes more than a minimal effect upon her ability to work. Thus, it was not error for the Commissioner to find that Plaintiff's anemia was not a "severe" impairment at step 2.

**Carpal tunnel syndrome**

A consultative examination was performed by Ibrahim S. Sadek, M.D., on March 25, 2003.  R. 162.  Dr. Sadek found that Plaintiff had full range of motion of her wrists, with moderate left side discomfort, normal handgrip and finger pinch motor strength bilaterally, and could handle small objects with her upper extremities.  R. 163-164.

Dr. E. Jacob, a neurologist, examined Plaintiff on December 16, 2003.  R. 301.

Plaintiff reported to Dr. Jacob that she had numbness and pain in both wrists and

fingers.  R. 302.  She said her left wrist was very painful and weak.  *Id.*  She said that

when her left hand and fingers involuntarily moved, she could not hold anything in her

left hand.  *Id.*  She described similar but less severe problems with her right hand.  *Id.*

On examination, Dr. Jacob found reduced pinprick sensation in the index finger and

thumb bilaterally, positive Tinel's[1] and Phalen's[2] signs at the wrist on the right, and

positive Tinel's sign at the left wrist.  *Id.*  Dr. Jacob concluded that Plaintiff had the signs

and symptoms of carpal tunnel syndrome.  *Id.*  He prescribed, among other things, an

"NCV/EMG of the upper and lower extremities."  R. 303.  The NCV study showed carpal

tunnel syndrome on the right side.  R. 312.  The EMG study was normal.  *Id.*  Dr. Jacob

prescribed a wrist splint, as needed, for the carpal tunnel syndrome, and recommended

that Plaintiff continue with her exercise program.  R. 304.

On August 2, 2004, Plaintiff was examined by Ata Ul Mohsin, M.D.  R. 379.

Plaintiff complained of some numbness and weakness in both hands.  *Id.*  Dr. Mohsin

noted that Plaintiff was wearing a brace on both wrists.  R. 380.  He noted weakness

her handgrip.  R. 381.  His diagnosis was carpal tunnel syndrome.  *Id.*

---

[1] "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  It indicates a partial lesion or the beginning regeneration of the nerve."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, is available at:

http://www.mercksource.com/pp/us/cns/cns_hl_dorlands.jspzQzpgzEzzSz ppdocszSzuszSzcommonzSzdorlandszSzdorlandzSzdmd_a-b_00zPzhtm

[2] "Phalen's test is used in carpal tunnel syndrome where forcible palmar flexion of the wrist causes venous engorgement of the canal and an exacerbation of the symptoms."  Gpnotebook (www.gpnotebook.co.uk).

Defendant cites the findings of Dr. Sadek and the conservative treatment by Dr. Jacob as substantial evidence in the record for finding that the carpal tunnel syndrome was not a "severe" impairment.  Doc. 12, pp. 4-5.  The findings of Dr. Sadek, however, were in March, 2003.  By December, 2003, Plaintiff had positive carpal tunnel syndrome signs.  She was still wearing wrist braces in August, 2003.  She said that the condition caused weakness in both hands.  This condition could be expected to have more than a minimal effect upon Plaintiff's ability to work and, thus, it was error at step 2 to find that this condition was not "severe."

**Neck and shoulder pain**

Defendant cites to evidence on November 18, 2002, when Plaintiff saw Nathaniel H. Pae, M.D., complaining of joint pains and arthritis.  R. 153.  Dr. Pae found no pain in the joint areas after palpation, no swelling, and no bogginess.  *Id.*  He thought that range of motion was good "in all joint areas."  *Id.*  He thought that the pain Plaintiff experienced was the result of fibromyositis or fibromyalgia.  *Id.*  Also relied upon by Defendant is an examination on March 25, 2003, by Dr. Sadek.  Dr. Sadek found that Plaintiff had full range of motion of both elbows, with moderate left side discomfort but with full strength bilaterally.  R. 163.   Defendant further cites an x-ray of the left shoulder on November 14, 2003, that showed the "AC joint" to be intact, without fracture or dislocation.  R. 297.  Finally, it was noted that Plaintiff underwent 12 physical therapy sessions, made good progress, and experienced a decrease in pain after treatment.  R. 407.

However, a paraspinal surface EMG was conducted on February 11, 2003. Among other findings, "significant asymmetry" was noted at C7 on the right, T1 on the

left, and L5 on the left, and reduced muscle tension was observed at C3 on the left.  R.

144.  On January 7, 2004, Plaintiff had an MRI of her cervical spine.  R. 296.  This

revealed what appeared to be a "developmental irregularity of the cervical spine, with a

short C5-6 disc."  R. 296.  Bulges were also observed at C3-4, C4-5, and C6-7, with the

most pronounced at C4-5 and C6-7.  *Id.*  No nerve root impingement or cervical

myelopathy was observed, however.  *Id.*  On August 2, 2004, Dr. Mohsin found that

Plaintiff had restricted range of motion of her neck and lower back on flexion, extension,

and lateral rotation with muscle spasm, especially at the neck.  R. 381.  He found neck

pain radicular to both upper extremities with the positive MRI findings noted above.  *Id.*

The x-ray findings showed no fracture of the left shoulder joint, but that did not

address the issue of whether Plaintiff has impairment of her cervical spine.  The range

of motion findings in 2002 are less important than findings in 2003 and 2004.  Dr. Sadek

found that Plaintiff had moderate upper left side discomfort in his range of motion

studies in 2003.  Considering all of the evidence in the record, it was error to find that

Plaintiff's neck and shoulder pain would not have had more than a minimal effect upon

her ability to work.

**Obesity**

Plaintiff is five feet two inches tall and weighs about 200 pounds.  R. 163.  She

has been diagnosed as being obese.  R. 304.  Social Security Rule 02-01, ¶ 3, states

that the Commissioner will consider obesity in determining whether an individual's

impairments are severe.  A diagnosis of obesity is generally relied upon by the

Commissioner.  *Id.*, ¶ 4.  The Ruling further provides:  "As with any other medical

condition, we will find that obesity is a 'severe' impairment when, alone or in

combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.*, ¶ 6.  Plaintiff's obesity, either alone or in combination with other "severe" impairments should have been considered by the Administrative Law Judge to have been "severe" and considered at steps beyond step 2.

**Whether the Commissioner considered all of Plaintiff's impairments in combination**

Impairments must be evaluated in combination when determining whether an impairment meets or equals a listed impairment at step 3, a claimant's ability to do past relevant work at step 4, other work at step 5, and when determining a claimant's residual functional capacity.  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  Impairments must be evaluated in combination even though some impairments are not severe.  Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985).  The Eleventh Circuit has "repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled."  Davis v. Shalala, 985 F.2d at 534.

The Administrative Law Judge's decision did not consider several of Plaintiff's impairments in combination (carpal tunnel syndrome, neck and shoulder pain, and obesity) because he found that a number of the impairments were not "severe." Further, even those impairments which were not severe (bronchitis, shortness of breath, hypertension, possible coronary artery disease, chest pain, and anemia) should have been considered in combination with Plaintiff's "severe" ailments.

**Whether the Commissioner followed Social Security Rule 96.8p, assessing Plaintiff's residual functional capacity function-by-function**

Paragraph 4 of this Ruling provides:

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

The residual functional assessment must take into consideration all of a claimant's "severe" impairments, but those impairments which are not "severe" must also be considered.  Social Security Rule 96.8p, Evidence Considered.

The Administrative Law Judge considered each "severe" impairment essentially in isolation, assessing as a general matter the medical severity of each and then determined that Plaintiff retained the residual functional capacity to do light work, with limitations.  R. 16-17.  A function-by-function analysis was not done.

**Assessment of the credibility of Plaintiff's pain testimony**

Pain which is reasonably attributed to a medically determinable impairment is relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter

of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

The record shows that Plaintiff had several medical conditions that reasonably might give rise to the pain she says she says that she experiences.  An MRI of her lumbar spine showed "significant degeneration" at the L5-S1 level.  R. 167.  Another MRI also showed a "developmental irregularity of the cervical spine, with a short C5-6 disc."  R. 296.  Bulges were observed at C3-4, C4-5, and C6-7, with the most pronounced bulges at C4-5 and C6-7.  *Id.*  These objectively determined medical conditions, in combination with Plaintiff's obesity and depression, could "reasonably be expected to give rise to the claimed pain."

The Administrative Law Judge discounted Plaintiff's testimony, finding that her pain testimony was inconsistent with her daily activities.  He found that Plaintiff walks for more than one-half mile, watches television 12 hours or more a day, drives to and from the doctor's office, makes the bed, washes small loads of clothes, helps her daughter do household chores, goes grocery shopping, and is able to feed herself and shower without assistance.  R. 16, citing exhibits 1E and 10F.  He also found her pain testimony to be inconsistent with her subjective statements to physicians, noting that in January, 2003, she said that her left hip and lower back pain was improved with medication and treatment.  *Id.*, citing exhibit 9F.

On January 23, 2003, Plaintiff reported to her physician, Nathaniel H. Pae, that her hip and back pain was improved with "medication and treatment."  R. 149.  On January 30, 2003, Plaintiff reported that her left hip pain was doing better after taking Skelaxin.  R. 147.  Dr. Pae prescribed Naprosyn during the day, and Skelaxin and Ultram at night, and she was directed to continue prescribed exercises.  *Id.*  On February 18, 2003, Dr. Pae noted that an EMG ordered by Plaintiff's treating chiropractor showed "significant deficit" on the left hip area.  R. 146.  He diagnosed "weakness of the left hip, chronic neuropathy" and gave Plaintiff a disabled parking permit.  *Id.*  From these medical records, therefore, it was uncertain whether Plaintiff's hip and back pain was improved with medication and treatment.

The evidence of Plaintiff's daily activities was not substantial evidence in the record to discount her pain testimony.  The findings are not supported by Plaintiff's own description of her daily activities.  Plaintiff said her daughters helped her with grocery shopping.  *Id.*  She said that her daughters "pretty much do the grocery shopping because I'm in too much pain."  R. 439.  She said she had to lean over the grocery cart during shopping.  *Id.*  She said that sometimes she could lift a gallon of milk and sometimes she could not.  R. 441.  She said she could not lift a 20 pound bag of potatoes.  R. 446.  She said that she dropped things at the grocery store, and did not do grocery shopping anymore.  R. 441.  She said also that her daughters did most of the cooking and cleaning.  R. 441.  One daughter, age 15, lived with Plaintiff in an apartment, and one daughter lived two doors away.  R. 442.  She said that sometimes after a shower she was too weak to dress.  R. 441.  She said that she had problems washing her own hair.  R. 444.  Plaintiff said that she watched television day and night,

but slept more during the day than at night.  R. 444-445.  She watched about 12 hours of television daily.  R. 445.

The summary of daily activities by Dr. Ibrahim S. Sadek, also cited by the Administrative Law Judge, is essentially consistent with Plaintiff's testimony.  Plaintiff told Dr. Sadek that she could walk about one half block, not one half mile, "before she has to stop and rest."  R. 162.  She said she did household chores and grocery shopping with her daughter (not alone).  *Id.*  She said she could feed herself (as apparently distinguished from cooking).  *Id.*  She said she could shower herself, but occasionally needed help with clothing.  *Id.*

Moreover, the findings are not supported by the exhibits cited.  Plaintiff described the same sorts of significant limitations in the Daily Living Questionnaire.  R. 67-69.  She said that in preparing meals, she had pain and weakness in her hands and shoulders; she sometimes needed help dressing, and could not put on her shoes; she had trouble standing in the shower, could not take a bath, and after a shower was very fatigued; she could no longer wash her hair; she drove a car only if she had to go out; she held on to furniture, canes, and others when she stood or walked; and could not take part in church services because that required the ability to stand.  *Id.*

Thus, reliance upon these minimal daily activities to discount Plaintiff's pain testimony was improper.  Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the

residual functional capacity to work); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be considered, including the claimant's testimony that she had to lie down after two hours of such work); <u>Foote v. Chater</u>, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

**Summary**

While the case law as to the evaluation of pain testimony might support a finding of disability, it would be more prudent to remand for reconsideration.  Of greatest importance is to correctly determine each of Plaintiff's "severe" impairments at step 2, since it is the combination of these impairments which may or may not cause inability to do work.  Also missing from this record is an opinion from a treating physician as to Plaintiff's residual functional capacity.  A remand would provide an opportunity to obtain such evidence.  On remand, the Administrative Law Judge should have the opportunity to fully reconsider Plaintiff's pain testimony in light of this report and recommendation, any evidence in this record not previously cited, and new evidence from treating physicians.

Accordingly, it is **RECOMMENDED** that the Court **REVERSE** that

Commissioner's decision and **REMAND** for reconsideration consistent with this report

and recommendation.

**IN CHAMBERS** at Tallahassee, Florida, on August 26, 2005.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**